# TABOR *v.* BUSH.

*(In the Superior Court of Denver, November 22, 1883—On motion for new trial.)*

1. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—SURPRISE. A new trial should not be granted on the ground of newly discovered evidence, unless such evidence bears directly upon the matters in issue, and its effect if it had been heard, ought necessarily to have resulted in a different verdict. Evidence, though discovered after the trial, which bears upon collateral matters merely, will not authorize a new trial. A party cannot well claim to be surprised that his adversary testifies to a state of facts within the knowledge of both, though their version of the details differ.

2. SAME—ERROR SUPERINDUCED BY PARTY. A new trial will not be granted for an error in instructions, which was superinduced or contributed to by the conduct of the party seeking to take advantage of it, when it does not appear conclusively that such error resulted prejudicially to the party so at fault.

3. INSTRUCTIONS—GAMBLING TRANSACTIONS. Where the proof is not conclusive as to whether, in the purchase or sale of articles for future delivery, there was a *bona fide* intention to deliver the property nominally purchased or sold, or whether the transactions were intended to be simply speculations in prices, and settled upon the basis of the difference between the price at the time of the purchase and time for delivery, it is not error to submit the matter to the jury as a question of fact, to be determined upon the evidence, coupled with direction that if they find the latter state of case to be true, the claim founded thereon must be disallowed, as the result of a gambling transaction.

4. SAME—SAME. *Quere:* Whether a party whose lawful debt has been paid at his request, should be heard to question the source from which the means of payment came, in a suit for the amount so paid.

5. AFFIDAVIT OF JUROR. Upon grounds of public policy, no affidavit, deposition, or sworn statement of a juror, will be received to impeach a verdict, to explain it, to show on what ground it was rendered, or to show a mistake in it.

6. MOTION—NOTICE OF—CONSTRUCTION. The provisions of the Code must be liberally construed with a view to promote their object and assist parties in obtaining justice. Section 390, (providing for twenty-four hours notice of motion) requires reasonable notice, not exceeding twenty-four hours, under the circumstances of each particular case.

DAWSON, J.

The only grounds for new trial insisted on in argument, were:

*First*—Surprise and newly discovered evidence.

*Second*—That the Court erred in submitting to the jury the

question as to whether the transactions between plaintiff and Ortel & Co. were *bona fide* and valid, or gambling transactions and void.

*Third*—That the Court erred in instructing the jury to allow interest on the Ortel claim, if they found it valid, and the matter of interest generally.

The affidavit of defendant in support of the motion states, that since the trial he has discovered certain material evidence not known by him at the time of the trial, and was surprised at the evidence of plaintiff to the effect that the price paid by plaintiff for defendant's interest in the Tam O'Shanter group of mines was $30,000, and not $30,000 net; *i. e.* $30,000 in addition to $12,500, for which plaintiff was carrying defendant on original purchase—the interest sold by defendant to plaintiff being one-sixteenth of the property, would, according to plaintiff's testimony, make the purchase at the rate of $480,000 for the whole; that since the trial he has learned that he can prove by certain witnesses that plaintiff told them he had purchased the interest of defendant in said Tam O'Shanter property at the rate of $580,000 to $600,000 for the whole; and that he was misled by his counsel, who advised him that under the pleadings this proof was not necessary, and so he made no effort to procure it.

Affidavits of William Parker and Eben Smith are filed, in which the former says plaintiff stated to him that he purchased the interest of defendant in said Tam O'Shanter at $580,000, to wit, at the rate of $480,000 over and above the $100,000 original purchase money; and the latter states that the plaintiff told him he had purchased the interest of defendant therein at the rate of about $600,000 for the entire mine, and offered to sell to affiant an interest at the rate of $600,000 for the whole. Admit all this to be true, does it furnish sufficient reason for setting aside the verdict? The rule may be briefly stated, thus: A new trial should not be granted for newly-discovered evidence unless it bears directly upon the matters at issue, and its effect, if it had been heard, ought necessarily to have resulted in a different verdict. The matters in litigation between the parties did not involve the Tam O'Shanter transaction. Both parties admitted that deal to be closed, and the

price paid for it was not in controversy in this suit. It came incidentally into the testimony, defendant claiming that the Breyton Ives claim sued on was settled and paid in that transaction, and plaintiff that it was not. So the question in litigagation here was whether the Breyton Ives claim was settled in that trade, and not the price at which the interest was bought. This was merely a collateral fact. Defendant does not pretend that he can prove by either of the witnesses named, or any one else, that plaintiff ever said the Breyton Ives claim was settled in that transaction.

Defendant cannot well claim that he was surprised at the testimony of plaintiff to the effect that the thiry thousand dollars paid for the interest in the Tam O'Shanter, were made up of sundry different items, consisting in part of notes and other matters of debt due by defendant to plaintiff, and the balance in cash; for defendant knew that to be true, as his testimony shows. He claims that it was made up in part of the Breyton, Ives & Co. claim, and it is difficult to see how he could have been surprised that plaintiff in his testimony denied this, for if plaintiff had intended to admit its settlement in that transaction he would hardly have sued for it in this action. So that, if proof touching the price at which plaintiff purchased the interest in the Tam O'Shanter be important, as tending to confirm the claim of defendant that the Breyton Ives debt was paid in that sale, I think defendant should have disregarded the advice of counsel and made some effort to produce it at the trial. Moreover, I cannot say that conclusive proof that plaintiff bought the interest of defendant in the Tam O'Shanter at $30,000 net, would establish the fact that the Breyton Ives claim was settled and paid in that deal, and therefore, that the verdict must have been different with that proof in.

I do not think the Court erred in submitting the validity of the Ortel transactions to the jury, at least not to the prejudice of the defendant. It does not seem to me clear that, as a matter of law, under the proof those transactions were illegal. They were the purchase and sale of grain and produce for future delivery. The testimony showed that both Ortel and Lester & Co., through whom the purchases and sales were

made, were members of the Board of Trade, or Stock Board, of Chicago, and that the transactions were had on 'Change, or through the medium of that Board; and further, that under the rules of that organization, contracts known as "puts" and "calls," and all similiar deals held to be gambling transactions, are prohibited. It further appeared in proof that Lester & Co., who made the purchases and sales, were able to deliver the articles bought and sold if a delivery became necessary under the contracts, as also that the plaintiff was able to pay for any articles bought by him if delivered, and to execute by actual delivery all articles sold for his account, if required; so that, while it is the conceded duty of the Courts to scrutinize these transactions closely, and as a matter of law hold to be void and against public policy all such contracts as clearly amount to mere wagers upon the fluctuations in the price of the commodities nominally dealt in; yet no Court has gone so far as to hold void a contract simply for the reason that, in case of a purchase or sale for future delivery, the parties so changed their position or purpose that no actual delivery was made. The question was left to the jury to determine, as a matter of fact, under the evidence, whether in those transactions there was any *bona fide* intention to deliver the property bought or sold, or whether the intention was simply to bet upon the fluctuations in the market, and settle by the difference between prices at the time of the purchase and time for delivery—with the instruction that if they found the latter to be the case they should disallow the claim as a gambling debt. As between the parties directly interested in the transactions, I think that would have been proper under the proof in this case. But as between plaintiff and defendant, under the facts in evidence, I am not sure but it was error to the prejudice of plaintiff. I strongly incline to the opinion, upon mature consideration, that an instruction asked on behalf of plaintiff and refused, should have been given; which instruction was to the effect that if the jury believed from the evidence that defendant was indebted to Ortel & Co. and induced plaintiff to assume, cancel and pay that debt, by his promise to pay and reimburse the plaintiff, and that, in consideration of said promise, plaintiff paid the debt of defendant to Ortel & Co., they should find for plaintiff as to the sum so paid and settled.

As I remember the testimony there was nothing tending to show that any debt which defendant might have owed Ortel & Co. was vicious; and if the latter firm chose to waive the right to plead the illegality of the amount due plaintiff (if it was illegal,) and pay it by satisfying *pro tanto* the lawful debt of defendant, ought the latter, after his debt was thus paid, to have been heard to question the mode of payment? I doubt it. If A owe a debt to B, and C, upon a wager, should win a sum from B, or from any one else, sufficient to satisfy that debt, and at the request of A should take the money so won and satisfy the debt, A could hardly be allowed to escape repayment because C could not have enforced the collection of the money with which the payment was made, if resistance had been offered by the person from whom he won it. But this idea need not be pursued here. Defendant, by the instruction given, was permitted to avoid the repayment, if the jury should find the transactions between plaintiff and Ortel & Co., unlawful, and it follows, in my opinion, that if there was error in the instructions as to the Ortel claim, it was to the prejudice of plaintiff and not of defendant.

As to the matter of interest: Defendant offered the affidavit of one of the jurors bearing upon the subject. Upon investigation and reflection, I am satisfied that neither upon reason nor authority can this practice be justified. Thompson & Merriam on Juries, section 440, has the following: "Upon grounds of public policy the Courts have almost unanimously agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach a verdict, to explain it, to show on what ground it was rendered, or to show a mistake in it." The text is amply supported by authorities, and is in accord with reason. It would be a very dangerous practice to allow *ex parte* affidavits, or any other form of testimony by members of the jury, touching matters taken into account in reaching a verdict, or the basis upon which a verdict was made—a practice which would lead to endless confusion and uncertainty, and tend to defeat the policy of the law, that verdicts shall be conclusive, and matters in litigation be speedily determined. So the affidavit of the juror has not been considered, and the motion to file it will be denied.

In view of the statute (General Laws, 513) as construed by the Supreme Court in *Hawley* v. *Baker*, 5 Colo., 118, I am satisfied it was error to instruct the jury, if they allowed the Ortel claim, to allow interest upon it. It is but fair to say that if the attention of the Court had been drawn to that opinion the jury would not have been so instructed, and that counsel misled the Court, not only by failing to direct attention to the statute and its construction, but by allowing, without objection, testimony as to the amount of interest to go to the jury, and even consenting that the jury might take to their room the calculations of expert witnesses showing the interest in detail upon each item in the claims of both plaintiff and defendant. Of course, I do not mean to intimate that in this there was any bad faith on the part of counsel to the Court, or any purpose to set a trap, by which, in case of an adverse verdict, a new trial might be secured—thus speculating on the chances. On the contrary, I assume that, in the pressure and hurry of the trial, counsel, like the Court, overlooked the incidental matter of interest—complete attention being absorbed by the weightier concerns involved.

Whether or not the Ortel claim was allowed by the jury can not be determined, therefore it is impossible to say that the instruction as to interest worked any injury to defendant. And in view of what has been said above, I will not set aside the verdict on account of the instruction; but will allow plaintiff to elect whether he will abate the judgment by the amount of interest which might have been allowed on the Ortel claim thereunder.

. Though grounds numbered 3 and 4 were not urged in argument, I deem it proper to say that the answer in the deposition of the witness Craig, which detailed the compensation received by him as manager of the opera houses in Kansas City, Topeka and St. Joseph, was suppressed for the reason, as it appeared to the Court, that it was not proper testimony by which to prove the value of the services of defendant as manager of the Tabor Grand Opera House, in Denver—the witness not pretending to have any knowledge of the services performed by, or the duties and responsibilities of defendant in that behalf, and not showing such familiarity with or knowledge of the

usual and proper compensation for such services, or such experience as to make the sum paid to him a standard by which to measure the value of the services of managers in general. The motion to suppress the deposition of Dixon was based on the fact that notice of the application to the Court for an order to take the deposition upon shorter time than five days notice, was not served upon defendant twenty-four hours before making the application.

The provision of the Code (Section 368), which authorizes the Court, or Judge, to prescribe a shorter time than five days in which a deposition may be taken, does not require that this shall be upon notice. If notice of the application in such case be required, it is by virtue of sections 389 and 390 of the Code, as amended by act of March 1, 1881. (Sess. Laws, 1881, p. 56.) If those sections apply to a matter of this sort, I am inclined to hold that they are directory merely, and not mandatory. It is not the province of Courts to make law; but it is their duty, in interpreting statutes, to give such construction as will subserve the ends of justice. Section 446 is in relation to the construction of the Code, and enacts that "its provisions, and all proceedings under it, shall be liberally construed, with a view to promote its object and assist parties in obtaining justice." The showing upon which the application for leave to take this deposition was based, was to the effect that if twenty-four hours notice of the application was given, the opportunity to take the deposition would be lost. Defendant had twenty-four hours notice of the taking of the deposition, and so had opportunity to cross-examine if he desired, of which he failed to avail himself. If a strict construction and literal compliance with the letter of section 390 is to be required in all cases, it may sometimes work a defeat of the ends of justice. I do not think it materially affects this case either way, for in all probability, indeed, I may say, I have no doubt, the verdict would have been precisely the same if the deposition of Craig had been read and the deposition of Dixon suppressed. Both related to the value of defendant's services as manager of the Tabor Grand Opera House, and were merely cumulative upon the point.

In my view, however, the provision of the Code alluded to

should be construed to require a reasonable notice of such motion, not necessarily exceeding twenty-four hours, under the circumstances of each particular case.

I deem it unnecessary to refer to the other grounds assigned. The motion for a new trial will be overruled.

*L. C. Rockwell* and *T. M. Patterson*, attorneys for plaintiff.

*Teller & Orahood* and *E. O. Wolcott*, attorneys for defendant.